IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**THOMAS WILLIAMS,**

Plaintiff,

v.

**CITY OF MEDFORD; LEVI MOFFITT; and GREG LEMHOUSE,**

Defendants.

Civil No. 09-3026-CL

**ORDER AND REPORT AND RECOMMENDATION**

CLARKE, Magistrate Judge:

## INTRODUCTION

In this action, Plaintiff Thomas Williams alleges claims against Defendants City of Medford, Levi Moffitt, and Greg Lemhouse for violation of his civil rights, 42 U.S.C. § 1983, and a pendent state claim for wrongful arrest. This Court's Report and Recommendation recommending denial of Defendants' motion for summary judgment (#28) (R&R) was adopted by Order (#30). Defendants have filed a "Second Motion for Summary Judgment" (#45) which Plaintiff opposes. For the reasons explained, Defendants' motion should be granted in part and denied in part.

Order and Report and Recommendation - 1

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); Walls v. Cent. Contra Costa Transit Auth., ___ F.3d ___, No. 10-15967, 2011 WL 3319442, at *1 (9th Cir. Aug. 3, 2011). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party must carry the initial burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact. Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986). Summary judgment should be

Order and Report and Recommendation - 2

granted for the movant, if appropriate, in the absence of any significant probative evidence tending to support the opposing party's theory of the case. Fed. R. Civ. P. 56(e); THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076.

## BACKGROUND

Defendant Levi Moffitt, a patrol officer for Defendant City of Medford, on March 19, 2007, at approximately 2:50 a.m., was investigating a burglary alarm call of a jewelry store on Main Street in Medford, Oregon. An unknown person had broken out a large portion of glass in the front door of the business. Officer Danrich handled the investigation. Officer Moffitt broke out additional glass in the door and entered the business with his canine to make sure no one was inside.

Plaintiff Thomas Williams was working close to the store as a delivery van driver for the Medford Mail Tribune newspaper. Williams had learned earlier that night that a vending machine had been stolen. Williams approached Officer Moffitt at the store after Officer Moffitt returned to his patrol car to ask him about the vending machine. Officer Moffitt told Williams they had not found the vending machine, but were investigating the broken door.

Williams drove away and contemplated what he had seen. He thought it suspicious, so he called 9-1-1 about 30 minutes later from a pay phone at an Albertson's grocery store. He called

Order and Report and Recommendation - 3

9-1-1 because he did not know the phone number of the non-emergency line and there was no phone book at the pay phone. Officer Moffitt was dispatched to this 9-1-1 call. When asked why he had called 9-1-1, Williams responded: "Well, I feel like, you know, the rights of this store owner are being violated, you know, and that bothers me as a citizen." Because Officer Moffitt was the officer he had spoken with at the store, Williams requested to speak to his supervisor.

Officer Moffitt contacted his supervisor, Defendant Sergeant Greg Lemhouse, who responded to the scene. Williams explained to Sergeant Lemhouse that he had called 9-1-1 because he felt like the civil rights of the store owner were violated. Officer Moffitt and / or Sergeant Lemhouse told Williams that it was a crime to call 9-1-1 for a non-emergency. Officer Moffitt arrested Williams for Improper Use of 9-1-1. ORS 165.570 Improper Use of Emergency Reporting System, provides in pertinent part that:

> (1) A person commits the crime of improper use of an emergency reporting system if the person knowingly:
>     (a) Calls a 9-1-1 emergency reporting system . . . for the purpose other than to report a situation that the person reasonably believes requires prompt service in order to preserve human life or property; . . .
> . . . .
> (3) Improper use of an emergency reporting system is a Class A misdemeanor.

Williams was lodged in the Jackson County Jail without incident.

The Jackson County District Attorney later reduced the misdemeanor charge of Improper Use of 9-1-1 to a violation.

On June 25, 2007, Williams was convicted of the violation. The "Judgment of Conviction and Sentence" states in relevant part:

//

It is adjudged that the defendant has been convicted on the following count(s):

**Count 1: Improper Use of an Emergency Reporting System**

Count number 1, Improper Use of an Emergency Reporting System, ORS 165.570, a Class A Misdemeanor reduced to a Class A Violation, DA Elect, committed on or around 03/19/2007.
Conviction is based upon a Court Verdict of guilty on 06/25/2007.

The Oregon Court of Appeals affirmed Williams's conviction without opinion on April 8, 2009. The Oregon Supreme Court denied Williams's petition for review on September 17, 2009.

In the two-year period of March 19, 2005, to March 19, 2007,[1] there were 27 police reports issued by the Medford Police Department involving Improper Use of Emergency Reporting System, including Williams's case.

Williams filed this action alleging deprivation of his civil rights in violation of 42 U.S.C. § 1983. He alleges the following constitutional violations: Count 1- Equal Protection, Count 2- First Amendment Rights of Speech and Petition, and Count 3- Fourth Amendment Unreasonable Seizure Without Probable Cause. Williams also alleges a pendent state claim for False Arrest.

## ANALYSIS

### Defendants' Motion to Strike Plaintiff's Evidence

In their reply concise statement of material facts, Defendants object to Plaintiff's exhibits offered in opposition to their motion for summary judgment and move to strike them. See Local Rule 56.1(b).

The Court considers the declarations of Piazza and Ayers and their attachments only to the extent the declarants point to evidence in support of Plaintiff's opposition. The Court does

---

[1] March 19, 2007, was the date of Williams's arrest.

Order and Report and Recommendation - 5

not consider their characterizations of the evidence in its resolution of Defendants' motion for summary judgment.

Defendants object to the "summaries" of deposition excerpts offered by Plaintiff, but Plaintiff's counsel explains that the deposition excerpts were excerpted verbatim from the official deposition transcript utilizing a computer copy and paste method. The Court granted Plaintiff's request at oral argument to submit the actual official deposition excerpts (#65). These have been filed (#66) and Defendants have filed the Supplemental Franz Affidavit (#67) which attaches the entire deposition transcripts. In any event, in resolving Defendants' motion for summary judgment, the Court relied only on the actual deposition excerpts of record prior to oral argument, and this portion of Defendants' motion is moot.

Accordingly, the Court denies Defendants' motion to strike Plaintiff's evidence.

## Defendants' Motion for Summary Judgment

### Section 1983 Claim Count 1- Equal Protection

"The Equal Protection Clause ensures that 'all persons similarly situated should be treated alike.'" Squaw Valley Dev. Co. v. Goldberg, 375 F.3d 936, 944 (2004) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)), abrogated on another ground as noted by Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1025, 26 (9th Cir. 2007). A plaintiff generally establishes an equal protection claim by showing either that a defendant intentionally discriminated on the basis of membership in a protected class, see Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or, where the state action at issue does not involve a fundamental right or a suspect classification, a "class of one" equal protection

Order and Report and Recommendation - 6

claim has been recognized by the courts, Squaw Valley, 375 F.3d at 944 (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). A class of one claim can be established by showing that she "'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Squaw Valley, 375 F.3d at 944 (quoting Olech, 528 U.S. at 564)).

Where an equal protection claim is based upon selective prosecution or enforcement of the law, as here, a plaintiff must show that a defendant's conduct had a discriminatory effect and a discriminatory motivation. Benigni v. City of Hemet, 879 F.2d 473, 477 (9th Cir. 1989) (citing Wayte v. United States, 470 U.S. 598, 608 (1985)). As to the motivation prong, the Ninth Circuit has stated that, "in an equal protection claim based on selective enforcement of the law, a plaintiff can show that a defendant's alleged rational basis for his acts is a pretext for an impermissible motive." Engquist v. Or. Dep't of Agric., 478 F.3d 985, 993 (9th Cir. 2007) (citing Squaw Valley, 375 F.3d at 944), aff'd, 553 U.S. 591 (2008).

Defendants assert only that the individuals in the 27 cases, including Williams, are similarly situated in that they all were arrested (or cited) for the improper use of the 9-1-1 reporting system and Plaintiff was not selectively arrested. Williams proceeds on a theory of selective prosecution / enforcement, which he reinforced at oral argument. Williams contends that Officer Moffitt's and Sergeant Lemhouse's conduct had a discriminatory effect because he was the only citizen arrested in two years for the crime of improper use of 9-1-1 where "aggravating circumstances" were not present as in the other cases. That is, he contends he was arrested for the offense but he was not "engaged in other criminal activity, drunk, unruly, mentally ill, fighting with his neighbors, calling to get a ride, or calling repeatedly despite

Order and Report and Recommendation - 7

warnings." (Pl. Opp'n at 6; Pl. Resp. Concise Statement at 3.) He contends that he was the single case in which the arrest or citation was based only on 9-1-1 misuse for a single call, and where the responding officers stated in their reports that the information should have been transmitted on the non-emergency line. Of note, Williams points to several instances in which Medford police officers responded to 9-1-1 calls not involving an emergency, where the individuals were not cited or arrested as a result of that first call, but were cited or arrested only after multiple calls and responses, some involving warnings. (See Jerden Aff. Ex. 1001 and Ayers Decl. Atts. Bates Nos. 208-09 (arrest); 212-13 (citation and release); 230-34 (arrest); 260-61[2] (arrest).)

A review of the police reports support Plaintiff's theory that he was treated differently in that "aggravating" factors were present in the other incidents in which individuals were cited or arrested for misuse of 9-1-1, and raise a genuine issue of material fact as to the element of disparate effect.

Williams points to evidence that Officer Moffitt and Sergeant Lemhouse arrested him for an impermissible motive–for reporting police misconduct, that of Officer Moffitt– and that his arrest for misuse of the 9-1-1 emergency system was a pretext for that discriminatory motivation. Williams's evidence is that, after Officer Moffitt responded to the 9-1-1 call at Albertson's, Williams told Officer Moffitt that he felt the rights of the store owner were being violated. (Williams Dep. at 43.) In response to Williams's request to speak to Officer Moffitt's supervisor, Officer Moffitt told Williams that, if he called his supervisor out, it was very likely

---

[2] The Court notes that, within the police report of this incident, it is reported that the individual had been cited the previous day, JCSO case number 06-18233 dated "082606," for "harassment and improper use of 911." However, the case number referenced is not included in the Jerden summary of improper use of 9-1-1 cases for the period at issue.

Order and Report and Recommendation - 8

that he would be arrested. (Williams Dep. at 44-45; see Moffitt Dep. at 13.) Williams also points to evidence that Officer Moffitt did not mention to him that calling 9-1-1 for a non-emergency is a crime until after Sergeant Lemhouse arrived. (Williams Dep. at 44.) After Sergeant Lemhouse arrived at Albertson's and Williams explained his concerns, Sergeant Lemhouse directed Officer Moffitt to arrest Williams. (Williams Dep. at 45-47.) Williams also points to the arrest report which was prepared by Officer Moffitt. In the space "Known AKA'S" on the arrest report is "Dudley Do-Right." (Franz Aff. Ex. 1003; Moffitt Dep. at 20.)

On this record, considering the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences, the Court finds that genuine issues of material fact exist as to Officer Moffitt's and Sergeant Lemhouse's motives for their actions in arresting Plaintiff.

Plaintiff raises genuine issues of material fact as to the elements of his equal protection claim which precludes summary judgment as to this claim.

**Section 1983 Claim Count 2 - First Amendment Rights of Speech and Petition**

Williams's First Amendment rights were violated if defendant intended to deter or chill plaintiff's protected speech, and such deterrence or chilling was a substantial or motivating factor in defendant's conduct. See Sloman v. Tadlock, 21 F.3d 1462, 1469 & n.10 (9th Cir. 1994) (and cases cited); Mendocino Envtl. Ctr. v. Mendocino Cnty., 14 F.3d 457, 464 (9th Cir. 1994); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1313-17 (9th Cir. 1989). Defendants concede that Officer Moffitt's and Sergeant Lemhouse's actions would chill or silence a person of ordinary firmness. However, they argue that the but-for cause of their actions was a desire to

protect scarce emergency resources from improper use and not a retaliatory motive, and Williams will not be able to establish the second element required to make a showing of retaliation.

While Defendants offer their evidence of a non-retaliatory motive for Williams's arrest, as shown above, Williams demonstrates on the evidence of record that a genuine issue of material fact exists as to Defendants' motivations in arresting him. Specifically, in the context of a First Amendment retaliation claim, Williams's evidence is that, in response to his request to Officer Moffitt to speak to his supervisor, Officer Moffitt told him:

> if I call my supervisor out here, the chances of you getting arrested are very likely. And then he asked me one more time if I wanted the supervisor out. And I thought about it for a moment and I said; Yeah, yeah, I need to have him come out and pursue what I was trying to report.

(Williams Dep. at 44-45; see Moffitt Dep. at 13.)

Drawing all reasonable inferences and considering the evidence in the light most favorable to Plaintiff, genuine issues of material fact exist as to Officer Moffitt's and Sergeant Lemhouse's motives for their actions which precludes summary judgment as to Williams's First Amendment retaliation claim. Defendants' motion on this ground should be denied.

**Section 1983 Claim Count 3- Fourth Amendment Unreasonable Seizure Without Probable Cause and State Claim for False Arrest**

Defendants argue that, because Officer Moffitt and Sergeant Lemhouse had probable cause to believe that Williams had committed the crime of Improper Use 9-1-1 and the arrest was objectively reasonable, Williams's Fourth Amendment claim and False Arrest claim fail. The Court agrees with Williams that the law of the case applies to foreclose Defendants' argument at

Order and Report and Recommendation - 10

this time. Under the law of the case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993). "[T]he issue in question must have been decided either expressly or by necessary implication in [the] previous disposition." Id. (Internal quotations omitted).

Here, this Court expressly determined in its R&R that "there are material issues of fact as to the probable cause for Plaintiff's arrest" and, in the Order adopting the R&R. The Court agreed with the conclusion that "material issues of disputed fact exist regarding probable cause for plaintiff's arrest." (#28 R&R at 12; #30 Order at 1-2.) Defendants offer nothing in their summary judgment materials which raises any question on the issue and the Court sees no reason to reconsider its previous disposition. See Mark H. v. Lehahieu, 513 F.3d 922, 932 n.8 (9th Cir. 2008).

Defendants make the separate argument that Williams's criminal conviction bars Williams's state false arrest claim and probable cause has been established as a matter of law. The Court addressed this identical claim in its ruling on Defendants' first motion for summary judgment, discussing the same cases Defendants cite in the instant motion. The Court determined there was no criminal conviction in this case where Williams was convicted of a violation in a civil proceeding that did not have all due process protections as in a criminal trial. (#28 R&R at 12; #30 Order at 1-2.) The law of the case applies to foreclose Defendants' motion on this ground.

Order and Report and Recommendation - 11

Defendants' motion for summary judgment as to Williams's Fourth Amendment unreasonable seizure claim and state claim for false arrest should be denied.

**Section 1983 Liability of Defendant City of Medford and Oregon Tort Liability of Individual Defendants**

Defendants contend that Defendant City cannot be held liable under section 1983 on a respondeat superior theory, and there is no evidence that it had the requisite policy or custom to be held liable. Plaintiff states he does not plead municipal liability against Defendant City under section 1983. Defendants also contend that, under the Oregon Tort Claims Act, Plaintiff's sole cause of action is against Defendant City of Medford. Plaintiff states he has no state claim against the individual Defendants.

At paragraph 3 of his Complaint, Williams alleges that Defendant City of Medford "is named as a defendant herein only as to the state pendent common law claim." (Compl. ¶ 3.) In Williams's section 1983 claims, his allegations are against "defendant officers" or refer to Defendants' decision to arrest or seize him. Plaintiff includes no allegations of a custom or policy of Defendant City to state a section 1983 claim against it. It is clear in the Complaint that Plaintiff does not allege a section 1983 claim against the City of Medford, and that it is named as a defendant only in the state claims. Defendants' motion as to Defendant City of Medford in the section 1983 claims should be denied.

It is not as clear from Plaintiff's allegations that, although Defendant City is named as a defendant in the state claims only, the individual defendants are not also defendants. See ORS

30.265. Defendants' motions as to the individual defendants in the state claims should be granted.

## ORDER

For the reasons stated, Defendants' motion to strike Plaintiff's evidence is denied.

## RECOMMENDATION

Based on the foregoing, Defendants' second motion for summary judgment (#45) should be granted in part and denied in part.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. *Objections to this Report and Recommendation, if any, are due by November 7, 2011. If objections are filed, any response to the objections are due by November 24, 2011*, see Federal Rules of Civil Procedure 72 and 6.

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 19 day of October 2011.

MARK D. CLARKE
United States Magistrate Judge

Order and Report and Recommendation - 13